Do I just start talking? You may. Just introduce yourself and start talking. Good morning. I'm Katherine Reynolds. I'm the attorney for the appellant, Norman Garand, in his case against J.P. Morgan Chase. It involves a case where he entered into a contract with Washington Mutual in 2007. That contract involved a promissory note secured by a deed of trust. The promissory note on its face advised Garand that the lender or anyone who takes this note by transfer and who is entitled to receive payments under this note is called the note holder. He's also advised, among other things in this document, that if all or any part of the property or any interest in the property is sold or transferred without lender's prior written consent, lender may require immediate payment in full under this contract. So this contract is the negotiable instrument. It's the asset. It is secured by a deed of trust. And that deed of trust was recorded in the county recorder's office, and that is a proper secured real estate transaction. You know who the note holder is. You know who the lender is. The Court made an erroneous finding that J.P. Morgan Chase purchased certain assets from WAMU, including the servicing contract, and they give them authorization to go ahead with a foreclosure based on being a lender, I mean, a loan servicer. If we go into the deed of trust and look up what a loan servicer actually is at paragraph 20, a loan servicer is a party that collects periodic payments. Periodic payments are defined on page 2 as the own. But I just want to make sure I understand your argument. You're saying that on this transfer from WAMU, because it's a loan servicing that they don't have the authority, J.P. Morgan doesn't have the authority. Correct. Correct. But I thought it was the trustee that actually went in and filed the notice of sale under the Nevada law. They both did. J.P. Morgan Chase consented to the trustee going in, and they both jointly recorded a notice of default. Right. So then what's wrong with that? The notice of default, because the trustee is not authorized to do a notice of default. If you want to sell the note, so the evidence shows that Washington Mutual sold the promissory note in blank. Now, when you sell a note, the note or a partial interest in the note must be sold with the security instrument. That's on page 20. So what does that mean, to be sold with the security instrument? Because you do hear case law saying, oh, it just goes along with it. Well, this is a statute of the law. Well, that's Edelstein, correct? Pardon me? That's the Edelstein case. Well, yeah, there's several cases that have found that. But you still. But the Nevada cases are following this Nevada foreclosure law, aren't they? Right. But that case did not argue that this contract was breached. Basically, it comes down to the argument that the original loan, the original lenders breached the deeds of trust when they sold the promissory note without having the security interest follow it on the county records. And they must do this. Well, but by virtue of law, they're twin instruments and one follows the other under Nevada law, doesn't it? Correct. But they still need to have a little bit of a right. What's the little circle or kind of hole here that didn't happen? Washington Mutual did not reconvey their interest on the county records when they sold the promissory note as required by paragraph 23 of the deed of trust and also required by NRS 107.077. So Washington Mutual, when they sold that promissory note, they had a limited number of days to ---- Paragraph 23 is dealing with something totally different. Yeah. I don't know. Did you make a mistake in referring to that? No. Paragraph 23 of the ---- The deed of ---- Deed of trust. Yeah. I'm looking right at it. It's dealing with a reconveyance when the borrower pays off the loan in full. It's not what happened here. When the loan is sold, whoever pays it off. So Washington Mutual sold it to someone who repaid them. They stamped the last page of the promissory note that they don't have any reconveyance. They have sold it in blank, and they were satisfied. They're not demanding any more payments. So they are then required, because they're out of the deal now, okay? We've been satisfied. It's been ---- the note's been sold to the next person. We're out. So we have to go do a reconveyance. I don't ---- that's not what happens when the note is sold. It's not paid off. It's just the right to collect the money is transferred to someone else, right? The right to collect the money is transferred. It's sold into a trust where a whole bunch of notes are sold into a particular trust, and that means that they are not ---- there's only a beneficial interest in that note held by that trust. That trust needed to have ---- that trust was who paid Washington Mutual. So Washington Mutual is out. Now that trust was required to go have the ---- have Washington Mutual reconvey and then an assignment to them to keep the county records clear. So that trust did not do their due diligence in reconveying and being sure that Washington Mutual's interest was reconveyed on the county records, and that the new trust put their name on it. That's what has affected ---- Let's say we don't accept that argument. Do you lose? No, because ---- Another argument. Okay. What is it? Okay. Well, I wanted to go to that paragraph really quick to go over it with you, just to read the exact language. Upon payment of the sums secured by the security interest. So that would mean upon payment of the sums to Washington Mutual, and they would have been paid or else they wouldn't have executed it. So I'm not agreeing with you on that, reconveying and seeing requirements. Plus, if you just step back, if you don't reconvey and assign into the new trust that would have ---- that the note would have been sold to, you've messed up the county records, which is what has gone on in all of these cases since MERS came into existence. Counsel, I want to step back for a moment. Okay. There's something that nags at me, and I'm sure that there's a simple explanation that you can provide. But can your client state a claim for defective foreclosure where no foreclosure sale has taken place under 107.080 for in paragraph 5? Can he make a claim of what? Can he make a claim for defective foreclosure? Well, the foreclosure sale hasn't occurred yet, but he could make a claim for a defective notice of default, because under 107.080, they're supposed to attach an affidavit to it that goes into this list of things that gives them authority, and that is not attached to those details. Why wouldn't that be sort of no harm, no foul? I mean, nothing's happened. Is this case not yet right? Because what has happened in all of these cases is the loans have been paid for by others. They sometimes refer to it as the secondary market. I refer to it as the 99 percent. And I can show you where they separate, and they have the top. Okay. Can we just step back and say what is the harm? Right now, what is the harm suffered? The top 13 banks are collecting all the periodic payments, even though the notes have been sold, and then they're going back and foreclosing on the properties as if they are the lenders, the note holders, the one that's required in the promissory note. Let's just stop right there. So what? So that means that. But, I mean, from the point of view of your client, he did sign this piece of paper. He does owe the money, correct? You're not saying he's the note holder. The note, yeah. But no one has tried to hold him responsible at this point or to take the house. Yeah. It would have to be the note holder would be the only person with authority to do that. That's incorrect. We haven't done that. Yes. J.P. Morgan Chase and CRC have recorded a notice of default to for and are proceeding with the foreclosure. But there is not yet any foreclosure, correct? It hasn't occurred yet. So 107.08. And it can't occur because a servicer cannot foreclose on a piece of property, number one. And I'm going to read the servicer paragraph to you. And then also the easier part is 107.080 does not even have an affidavit on it wherein the trustee acknowledges that the beneficiary gave him authority to sell and all of that stuff that's supposed to be in the affidavit. I thought those requirements were added after these notices were issued. Those requirements were added in 2011, weren't they? Well, they're also in the contract. They're also so my client is only obligated under the contract with Washington Mutual, correct? He's only obligated under the promissory note and deed of the trust. These are the contracts we're dealing with. The lender, which is what the lower court found the servicer, which is what the lower court found J.P. Morgan Chase to have picked up a service contract from the FDIC. A service contract would have been a contract between Washington Mutual allowing someone else to collect the periodic payments. I'm not even saying it existed. But even if it did, that's all it was, a contract with Washington Mutual to collect the periodic payments, which they picked up. They can't collect periodic payments from that. The note was sold. That note was sold. And the servicer ---- Well, hold on. You said that even though these requirements were added to the statute later, they were in the contract. So point me to the paragraph you're talking about. The contract where it says that the ---- okay. So that's the sale of the contract, paragraph 20. The note or partial ---- Hold on. Hold on. Deed of trust or promissory note? Which one? The deed of trust. Okay. Paragraph 20. A note or a partial interest in the note together with the security instrument can be sold one or more times without prior notice to the borrower. So the note holder stops receiving payments. He is required then to go to the borrower under paragraph 22. What do I do? They're not paying me. So he's ---- the lender shall give notice to the borrower prior to acceleration, not the trustee, the lender. And then if you ---- and then it has to say what the default was. This one doesn't even have a price on what was owed. That's another reason the notice of default is not accurate. And that's ---- okay. And then they have to also give the acceleration. So the note holder doesn't get paid. He writes to the borrower. Where's my money? You've got 30 days to pay this back. That's the notice of default. And the trustee can issue that. The deed of trust says that explicitly. But it doesn't say that in the contract. Yes, it does. It says that in the deed of trust. It says the trustee may issue the notice of default. And that's exactly what CRC did here. But it can't ---- where does it say? No, it doesn't say that. It says that the lender shall first give notice to the borrower. So the bottom line here is the client is trying to figure out who he owes the money  Just skip down one paragraph in 22. If lender invokes the power of sale. Which he has not. Which it has. No. There's no notice anywhere of who the lender is. That is the point in all these cases. They don't know who the note holder is. The top banks block as the servicers. And you don't get to find out who the lender is. But there's no such requirement for nonowner-occupied premises, is there? Well, that was where he went into saying that 107.086 did not apply because it wasn't owner-occupied. For one thing, that's not even correct, because even as the other side admits, he had it as a workshop the whole entire time and stayed there for a week and a half. But be that as it may, that is not the only way to destroy that notice of default. You have the lack of the affidavit in which the trustee acknowledges that they have authority to sell that is missing completely. And then you also have no assignment in this case. And that in itself is a breach. Do you want to save your remaining time for rebuttal? Yeah, I did. I'm sorry. But I haven't told you about the servicing thing, because this is the name. Well, your choice. Okay. I'm going to go really quick. Okay. Also, in 106, NRS 106.210, if the beneficial interest under the deed of trust has been assigned, the trustee under the deed of trust may not exercise the power of sale pursuant to 107.080 unless and until the assignment is recorded. That hasn't occurred, so there's no way that there is a valid notice of default. Now, as far as the servicer goes, the servicer, this is where the scam happens, because it says that if the note is sold, the mortgage loan servicing obligations are not assumed by the note purchaser unless it's otherwise provided. So when Washington Mutual sold it to this new person, a trust or whatever, they were required to they get to collect the payments. They just paid for the note. But this is where they separate, and they say that the borrower will remain with the loan servicer and be transferred from loan servicer to servicer. I'm saying this is the scam. This is the sham. You called it Cervantes. Cervantes did not argue that the contract was breached. This contract was breached because the the I think we have your point, but you might want to reserve some time. Okay. I would like to. Thank you. About a minute. Thank you. Good morning. Kent Larson on behalf of the Applease, JPMorgan Chase Bank, California Reconvenes Company. Could I just ask one question before you get into the heart of the argument? So who does own the note right now? We provided evidence to the trial court and in the record that the Federal Home Loan Mortgage Corporation, this note was, excuse me, there were actually two loans that originated at the same time in late January of 2007. One was the primary issue that we're here about today, which is a $208,000 note, which was secured to the deed of trust. That's the only one we care about. Exactly. And in late February of 2007, that loan was sold to the Federal Home Loan Mortgage Corporation. That documentation is in the record, and Washington Mutual reserved the servicing rights in connection with servicing the payments under that loan for Freddie Mac. So that's the way things stood as it moved forward. And then when the FDIC came in and when the OTS placed Washington Mutual Bank in 2005-2008, and the FDIC then was empowered to go ahead and sell those assets, those servicing rights under that note, were in fact. All that, in 2008, all that Washington Mutual still had was the servicing rights? All that Washington Mutual still had was the servicing rights. Okay. So what, just tell me what the note. So Freddie Mac has the note in 2008. The physical possession of the note was actually maintained by the servicer on behalf of Freddie Mac. And so they have that note. And in fact, I believe in the record I provide an affidavit that that note was in my office with the corresponding original deed of trust during the duration of this litigation for inspection by counsel. So, yes. But why isn't Chase now the holder of the note? Pardon? Why isn't Chase now the owner of the note? Is that what's your position or the note? No. We're not saying that the owner of the note, although to the extent that arguably you could move forward under either theory, that they are servicing and have the authority on behalf of Freddie Mac to move forward as they are the servicer for Freddie Mac, or alternatively, I mean, there are theories out there, and I think they could very well be applicable, that because this note was endorsed in blank and they have or could be argued to succeed to the interest of the beneficiary under the recorded deed of trust, that Chase, in fact, could record even or, excuse me, Chase could go forward and foreclose even under that theory. As the lender. As the lender. So I think. You're not arguing that or you are? I'm not. I'm saying that is an alternative basis on which Chase could move forward. But, I mean, we provided for the record, for the trial court, and I believe for this court, that the owner of the loan is, in fact, Freddie Mac and we are and Chase is of the note to Freddie Mac is in the record. All I saw was a declaration from someone saying, upon information and belief, I think this is what happened. Do you have a record site for something more specific than that? You know, I don't have that in front of me. I do know that it was provided in connection with one of the declarations and in connection therewith, there was actually part of a schedule. It was 1,005. Okay. I'll tell you what. We have these little pieces of paper or supplemental notice to the Court, so why don't you, following argument, find out the specific and provide us with that and a copy of that. We will. And what it is, it was attached, just so you know what it is. It was attached as part, as an exhibit to a declaration. There was a 1,005-page schedule, and this was the actual line, I think, on page 243 of that schedule that referenced this particular loan, referenced the WAMU origination number, the Freddie Mac number as evidence of that sale. And that was the part of the schedule to that agreement. So anyway, if I may pick up, after the acquisition of the assets by Chase from the FDIC in September of 2008, within a few weeks, notice was actually sent, and this is in the record as well, notice was actually sent by J.B. Morgan Chase Bank saying, we have taken over the servicing rights. And then we continue on in the fall of 2008 and as we get around to 2009. And one of the things that opposing counsel referred to is that there was no notice to the borrower with respect to his default and election to or opportunity to cure. We have placed in the record, and we actually had the borrower, the appellant in this case, testify under oath that he received no less than four different notices giving him an opportunity to cure between April of 2009 and September or late August of 2009. And it was only after that in or about October of 2009 that the trustee under the deed of trust, California Reconveyance Company, who has always been the trustee under the deed of trust, then moved forward and recorded, excuse me, and recorded the notice of default and election to sell as allowed by NRS 107.080. And as Your Honors have correctly indicated, the argument that was made as to the necessary detail in that initial notice of default and election to sell was as a result of a statutory revision that went into effect long after this particular notice of default and election to sell was recorded. This notice of default in this case was recorded in October of 2009. The new statutory parameters under NRS 108 went into effect October 1 of 2011. And so it was on that basis, then, that the process moved forward. The borrower doesn't challenge that he was in default of the deed of trust. In fact, the record makes clear. I think his complaint in large part goes back to, he says by matter of contract that he doesn't have notice of who the lender is, for example, and various other contractual obligations. So could you address the point she made as to where he claims he didn't have proper notice given to him? And again, I'm not sure I even understand those because, in fact, we went forward, we gave him the notice of the change of servicing rights in September of 2008. And in fact, they acknowledged, they acknowledged such because there were letters from opposing counsel in the spring of 2009 saying we understand that Chase is servicing this loan. And in fact, there was actually a loan modification application submitted, which was also part of the record, by Mr. Grand at the time. And for reasons which were still unknown and didn't come out on the record, that was, that lapsed as there was a failure to submit the documentation. And so as a result then, the rest of the process moved forward, consistent with the statutory framework. Getting to the point that was made with respect to NRS 107085 and 086, as you may be aware, those are notice requirements that deal with owner-occupied housing and the right to a mediation participation as it relates to owner-occupied housing. And in connection therewith, it was also very clear on the record, number one, that the notice required under NRS 085, providing notice that this opportunity was available, had, in fact, been provided, had, in fact, been affixed to the home within the allowed time frame, and the borrower acknowledged that upon deposition. In fact, he acknowledged, the interesting way he acknowledged it, he said, yes, my tenant brought that to me, okay? And so by that very acknowledgment and admission, that effectively negates any opportunity. And that, and I emphasize that only because there was much more testimony in the deposition that he, in fact, was not a full-time occupant of this property and, at the time, had, in fact, leased it out. So those sections just are not applicable to the situation before us, despite the fact that we actually complied with those notices as required by the statute, and that's what the trial court found. Now, again, what's in the record is the complaint in this case, although there were many other defendants other than my clients when it was first filed, there were only three claims that were actually asserted against my client, and the trial court correctly focused on those claims. We tried to cover other things in the initial briefs just to make sure we were trying to address any concerns that the court may have. But those three claims are, in fact, an ostensible breach under NRS 107.080, an ostensible breach or noncompliance with NRS 107.085. I've already addressed those. And then there was this claim for unjust enrichment, and there was not really any evidence in the record one way or the other to effectively support that. There were, in fact, contractual obligations. The money was borrowed. The money was not repaid. We had a servicer collecting, and the borrower upon deposition admitted that he defaulted on the $208,000 loan, and then admitted he defaulted on the other subordinate $25,000 loan secured by deed of trust just because he ran out of money. And as unfortunate as that was, the facts are no more complicated than that. I would also like to address one point that Your Honor brought up just a few minutes ago in reference to the Edelstein case. The Edelstein case was actually decided after these cases were or this case was fully briefed, and the Court in that case was looking primarily at various issues in association with Nevada's residential foreclosure program, and the documentation needed to be brought in connection with those issues, and also concepts of separation of notes and deed of trust and those kinds of things. But the Court correctly pointed out in footnote 5, which is at page 254, that prior to 2011, Nevada law provided that any assignment of beneficial interest under the deed of trust may be recorded. It wasn't. It must be recorded. Now, they have changed that, so now it is must be recorded. And now the requirements of NRS 108.080 do require very specific delineation of certain information, but that was not in effect at this time. I'm happy to answer any questions. Thank you. I think you have a minute left for your rebuttal. Okay. The Court, I mean, the Defendant acknowledged that the note was sold in 2007. Claims to have bought servicing rights to collect the periodic payments for that seller, I suppose, a year later. That is incorrect. The top 13 banks do not own the notes. In order to correctly keep the county records clear, you have to insist that the new note holders record new deeds of trust by doing the reconveyancing and the assignment. The failure alone to do the assignment means JPMorgan Chase has absolutely no interest, no contractual interest in this property at all. If you look at the service contract, as I already read to you, the portion of the servicing contracts are not assumed by the new note purchaser. So Washington Mutual sold the note to the secondary market. They paid for it in 2007. In 2008, that's when he claims he bought this stuff long after the breach of the deed of trust. These deeds of trust, the loan originators breached the deeds of trust by not reconveying on the county records. A failure to find that will mean that you will never have clear county records because the county records are a mess right now because of MERS. Thank you. Thank you. Thank you both for your argument this morning. The case of Garan v. JPMorgan Chase is submitted.
judges: Marbley, McKeown, Watford